IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00336-CMA-KMT

DENNY BENTON,

     Plaintiff,

v.

TOWN OF SOUTH FORK AND POLICE DEPARTMENT,
FORMER POLICE CHIEF RANDY HERRERA,
CURRENT POLICE CHIEF JAMES CHAVEZ,
AT TIMES ACTING TOWN MANAGER AND CLERK SHARON FAIRCHILD,
FORMER TOWN MANAGER TODD WRIGHT,
FORMER MAYOR LARRY HEERSINK,
TOWN MANAGER BILL MATTHEWS,
TRUSTEE GROVER HAWETHORNE,
COLORADO STATE PATROL DISPATCH ALAMOSA, COLORADO, and
POLICE OFFICER PAM STEWART,

     Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

     This matter is before the court on Defendants Town of South Fork, Town of South Fork

Police Department, James Chavez, Sharon Fairchild, Todd Wright, Larry Heersink, and Grover

Hathorn's "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) [sic] & (6)" (Doc. No. 16, filed

June 27, 2012 ["Town Defs. Mot."]), the "Motion to Dismiss of Defendants Colorado State

Patrol and Pam Stewart" (Doc. No. 31, filed July 20, 2012 ["State Defs. Mot."]), and Defendant

Randy Herrera's "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) & (6)" (Doc. No. 72, filed

Oct. 23, 2012 [Herrera Mot. Dismiss.]).[1]  For the following reasons, the court recommends that

the Motions be GRANTED.

## FACTUAL BACKGROUND

The following factual background is derived from Plaintiff's Amended Title VII

Complaint (Doc. No. 9, filed Apr. 27, 2012 ["Am. Compl."]) and the parties' submissions with

respect to this Recommendation.  At the outset, the court notes that Plaintiff's Amended Title

VII Complaint is far from a model of clarity—indeed, it is styled in a narrative fashion that does

not always progress chronologically or logically.  As a consequence, the court refers to other

documents when necessary to provide context.

Plaintiff Denny Benton was a police officer with the Town of South Fork Police

Department until his resignation on September 23, 2009.  (*Id*. at 15.)  On August 16, 2008, a

little more than one year prior to Plaintiff's resignation, Plaintiff initiated a traffic stop of a car

driven by David Zelenok, the Public Works Director for the City of Centennial, Colorado.  (*See*

*Zelenok v. Benton, et al.,* Case No. 09-cv-01918-WDM-KMT, Doc. No. 1.)[2]  Approximately one

---

[1]The court refers hereinafter to Defendants Town of South Fork, Town of South Fork
Police Department, James Chavez, Sharon Fairchild, Todd Wright, Larry Heersink, Grover
Hathorn, and Defendant Herrera, collectively, as the "Town Defendants."  Defendant Matthews
has not been properly served at this juncture.  (*See* Order Granting Motion to Quash, Doc. No.
88.)  Plaintiff has until March 7, 2013 to effect service on Defendant Matthews.  (*See id.* at 6.)

[2] The court takes judicial notice of the pleadings filed in the *Zelenok* case.  *See*
*Continental Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1071 (D. Kan. 2007) (court may
take judicial notice of pleadings filed in other cases on Rule 12 motion).

year later, on August 12, 2009, Mr. Zelenok filed a civil rights lawsuit against Plaintiff and the Town of South Fork based on Plaintiff's conduct during that stop.  (*See id.*)

In late August or early September 2009, Defendant Herrera became the new chief of police for the Town of South Fork.  (Am. Compl. at 7.)  According to Plaintiff, "as soon as Chief Herrera arrived it was nothing but threats that he was going to ruin [Plaintiff's] career and [Defendant Herrera] placed [Plaintiff] in a very hostile work environment."  (*Id.*)

First, in early- to mid-September 2009, Defendant Herrera initiated an internal affairs investigation relating to the Zelenok stop—even though, according to Plaintiff, the prior chief of police had already reviewed the stop and "saw nothing wrong with neither [the] stop nor the charges made against Zelenok."  (*Id.* at 8.)  When Plaintiff asked if Mr. Zelenok had filed suit over the stop, Defendant Herrera denied that Plaintiff "was being taken to court."  (*Id.* at 8.)

Second, on September 6, 2009, Plaintiff initiated a traffic stop of a car driven by Mr. Billy Elgin, referred to only in passing in the Amended Complaint as the "Elgin stop." (*Id.* at 21, 28; *see also* Doc. No. 78-2 at 6-8.)  Defendant Herrera disciplined Plaintiff through a formal write-up for his conduct during the Elgin stop after a complaint was lodged with the police department.  (Am. Compl. at 21; *see also* Doc. No. 78-2 at 7-8.)

Third, on September 11 and 13, 2009, Plaintiff did not report on time for his scheduled shifts.  (Am. Compl. at 10.)  Defendant Hererra formally wrote Plaintiff up for these incidents even though, according to Plaintiff, department policy and procedure required an officer to be late three times before being disciplined.  (*Id.* at 10; *see also* Doc. No. 78-2 at 2-5.)

Fourth, Defendant Herrera allegedly told Plaintiff that two town trustees wanted him fired. (Am. Compl. at 9.) Plaintiff deduces that Defendant Hathorn must have been one of those trustees because Defendant Hathorn previously threatened the Town of South Fork Police Department and Plaintiff, in particular, with financial reprisal after Plaintiff cited him for having his dogs off-leash. (*Id.* at 9, 15.)

Finally, Defendant Herrera allegedly told Plaintiff that a man Plaintiff's age "should be looking for another career." (*Id.* at 9.) Plaintiff also maintains that he was "treated the exact opposite of the other two Hispanic Officers by Herrera." (*Id.* at 15.) Defendant Herrera allegedly gave these two Hispanic Officers extra time to work during a music festival while Plaintiff was ordered not to work at all. (*Id.* at 16.) Defendant Herrera also promoted Defendant Chavez to an unspecified position, notwithstanding Plaintiff's seniority. (*Id.* at 16.)

The disciplinary actions discussed above culminated in a September 22, 2009 meeting between Plaintiff, Defendant Wright, and Defendant Herrera. (*Id.* at 10-13, 16, 21, 31.) At that meeting, Defendants Wright and Herrera presented Plaintiff with at least one of the formal write-ups and informed him that they were going to recommend that Plaintiff be fired at the town board meeting the next night. (*Id.* at 10.) It appears that Plaintiff may have been offered the option of resigning in lieu of termination—if he did so before the town board meeting—as

Plaintiff alludes vaguely to an informal agreement whereby certain write-ups[3] would not go into his personnel file if he resigned.  (*Id.* at 11.)

Plaintiff formally resigned on September 23, 2009.  (*Id.* at 15.)  During his exit interview, he presented a "written complaint/grievance" to Defendant Heersink, the town mayor at the time.  (*Id.* at 15-16.)  Defendant Heersink allegedly told Plaintiff that the grievance would go in his personnel file and Plaintiff would look like a "big whiner."  (*Id.*)

After resigning, Plaintiff searched for police officer positions elsewhere.  However, the Town of Delta, Colorado, Police Department rejected Plaintiff's application after viewing his Town of South Fork Police Department personnel file.  (*Id.* at 14, 18.)

In December 2009, Plaintiff was served with a summons from the Zelenok lawsuit.  (*Id.* at 14; *see also* Return of Summons, Doc. No. 18, Case No. 09-cv-01918-WDM-KMT.)  Plaintiff alleges that prior to his being served, he did not know that he was named as a defendant in that case.  (Am. Compl. at 14.)

Plaintiff obtained a copy of his personnel file in January 2011 from Defendant Fairchild, the Town of South Fork Town Clerk.  (*Id.* at 23.)  Plaintiff alleges that Defendant Fairchild (1) made statements to the effect that Plaintiff should be glad he did not go to prison and that there was always drama going on in the Town; (2) charged Plaintiff $1.00 per page to copy records instead of $0.25; (3) forwarded Plaintiff's personnel file to an attorney without a court order; and

---

[3]Plaintiff appears to assert such an agreement constituted a verbal contract between himself, Defendant Herrera and Defendant Wright that was breached when Plaintiff later discovered those write-ups in his personnel file.  (Am. Compl. at 29.)

(4) did not "follow through" on an unspecified hospital bill regarding stitches Plaintiff received while he was employed.  (*Id*. at 23-25.)

In December 2011, Plaintiff filed a release of records request and a freedom of information act request with the Town of South Fork and the South Fork Police Department for "police policies and procedures[,] for the Zelenok Case file and audio" and for the minutes from the "hostile work meeting."  (*Id*. at 27.)  However, he "never received a legal reason why they did not respond in writing."  (*Id.*)

That same month, December 2011, Plaintiff requested a copy of the case file on the Zelenok traffic stop from Defendant Colorado State Patrol Dispatch in Alamosa, Colorado, which, according to Plaintiff, is a subcontractor of the Town of South Fork.  (*Id*. at 28-29.)  He received a response from Defendant Stewart "saying that they did have it but it was on a computer they did not know how to get it off of."  (*Id.* at 28.)  Defendant Stewart also said "something close . . . to [Plaintiff] should just leave it at that."  (*Id.*)

In January 2012, Plaintiff obtained a copy of the file kept on the Zelenok traffic stop from the Town of South Fork and alleges that the file had been changed since Plaintiff resigned.  (*Id*. at 23-25.)  Plaintiff further alleges that Defendants Chavez and Mathews threatened to arrest him when he tried to view both his personnel file and the Zelenok case file again.  (*Id*.)  Plaintiff also alleges he was refused a copy of the police department procedures and policies.  (*Id*. at 26.)[4]

---

[4] Plaintiff's Amended Complaint also features a lengthy discussion of his interactions with his own counsel on the *Zelenok* case.  (*See generally* Am. Compl.)  However, Plaintiff has not named these individuals as defendants in this case; as such, these allegations are not relevant to this Recommendation.

## PROCEDURAL BACKGROUND

Plaintiff, proceeding *pro se*, commenced this lawsuit by filing his Title VII Complaint on February 8, 2012.  (Doc. No. 1.)  Plaintiff's Amended Complaint, now the operative pleading, was filed on April 27, 2012.  (Am. Compl.)  Therein, he appears to assert (1) claims under Title VII of the Civil Rights Act of 1964 for race discrimination, retaliation, and hostile work environment (*id*. at 3); (2) claims under the Age Discrimination in Employment Act of 1967 (ADEA) for age discrimination, retaliation, and hostile work environment (*id*.); (3) a claim under 42 U.S.C. § 1983 for violations of his Fourteenth Amendment rights (*id*. at 3-6, 28-29); and (4) state law claims for defamation and breach of contract (*id*. at 6, 29-31).  Plaintiff also asserts an ambiguous claim that some defendants "won't release freedom of information and release of records request."  (*Id*. at 3.)

The Town Defendants, with the exception of Defendant Herrera, filed their Motion to Dismiss on June 27, 2012.  (Town Defs. Mot.)  Defendants Colorado State Patrol and Pam Stewart (collectively, the "State Defendants") filed their Motion to Dismiss on July 20, 2012. (State Defs. Mot.)  Defendant Herrera filed his Motion to Dismiss on October 23, 2012, which incorporates much of the Town Defendants' Motion to Dismiss by reference.[5]  (Herrera Mot. Dismiss.)

On November 13, 2012, Plaintiff filed his "Motion for Amended Response to Oppose Defendants (sic) Motion to Vacate This Case."  (Doc. No. 78 [Resp.].)  Although not entirely

---

[5] Hereinafter, the court's references to the Town Defendants' Motion to Dismiss are intended to encompass both Doc. Nos. 16 and 72.

7

clear, the court construes this document to be a response to the Motions to Dismiss.  The Town

Defendants filed "Responses" to this document, (Doc. Nos. 82, 83, filed Nov. 27, 2012),

which—because the court has construed Plaintiff's "Motion for Amended Response" as a

response—constitute replies in support of their Motions to Dismiss.  Plaintiff subsequently filed

"Rebuttals" (Doc. Nos. 86, 87, filed Dec. 26, 2012), which effectively constitute improper

surreplies.  *See* D.C.COLO.LCivR 7.1 C.  Nevertheless, although they were filed well after the

applicable deadlines to respond to any of the Motions to Dismiss, the court has reviewed and

considered Plaintiff's Response and Surreplies, and has concluded that they do not alter the

court's recommended disposition of Defendants' Motions to Dismiss.

## LEGAL STANDARDS

### A.    **Pro Se** *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct.

897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.

1997) (a court may not "supply additional factual allegations to round out a plaintiff's

complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may

not "construct arguments or theories for the plaintiff in the absence of any discussion of those

issues").

**B.      *Lack of Subject Matter Jurisdiction***

        Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for lack of subject

matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment

on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks

authority to adjudicate the matter, attacking the existence of jurisdiction rather than the

allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)

(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction

when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is

on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings

in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The

dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir.

2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that

dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice

is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations ... [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

C.      ***Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Bellmon*, 935 F.2d at 1198.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 678-80.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*. (citation omitted).

### D.      *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or

11

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss. *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988). Once the defense is asserted, the burden shifts to the plaintiff to establish 1) that the defendant's actions violated a federal constitutional or statutory right and 2) that the federal right was clearly established at the time of the challenged conduct. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646. While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although the court must consider whether they plausibly give rise to a claim for relief. *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010). The plaintiff first must establish that his allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id*. This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id*. "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted." *Id*. at 202.  If the plaintiff fails to satisfy either part of this "heavy two-part

burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in

*Saucier*, holding that the sequence of the analysis is no longer mandatory.  *Pearson v. Callahan*,

555 U.S. 223 (2009).  The judges of the district courts and the courts of appeals are now

permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at

hand. *Id*. at 236.  The Supreme Court noted, however, that the sequence set forth in *Saucier*

often is the appropriate analytical sequence.  *Id*.

## ANALYSIS

### A.  *Fourteenth Amendment Claim*

In their Motion to Dismiss, the Town Defendants concluded that Plaintiff's Fourteenth

Amendment claim asserts a violation of his due process rights and relates solely to conduct that

occurred prior to Plaintiff's resignation.  As such, the Town Defendants argue that Plaintiff's

Fourteenth Amendment claim is barred by the applicable statute of limitations and, alternatively,

fails to state a substantive or procedural due process violation.  (Town Defs. Mot. at 10-11.)  The

State Defendants, on the other hand, conclude that Plaintiff's Fourteenth Amendment claim

concerns Defendant Stewart's failure to send Plaintiff the information he requested from the

Alamosa, Colorado office.  (State Defs. Mot. at 4-6.)

Defendants' confusion is understandable; Plaintiff's Complaint is unnecessarily verbose

and often unintelligible.  However, the court disagrees with both sets of Defendants as to the

subject matter of Plaintiff's Fourteenth Amendment claim.  Instead, liberally construing

Plaintiff's Amended Complaint, as it must, the court finds that Plaintiff's Fourteenth

Amendment claim asserts that the Town Defendants retaliated against him based on the *Zelenok*

lawsuit.  In support of this construction, the court points to Plaintiff's statement that "the Town

of South Fork retaliated against the Plaintiff for a Federal Civil Law Suit being filed by an

influential citizen (wrongful influence)[] [w]ithout informing Officer Benton of the Lawsuit []

was brought against him as well.  This is a 14th amendment violation."  (Am. Compl. at 3-4)

(emphasis added.)[6]

The only claim remotely analogous to Plaintiff's allegations is a § 1983 claim for

impermissible retaliation based on a plaintiff's exercise of his First Amendment right of access

to the courts.  The First Amendment applies to state actors by way of incorporation into the due

process clause of the Fourteenth Amendment.  *Citizens Concerned for Separation of Church and*

*State v. City and Cnty. of Denver,* 481 F. Supp. 522 (D. Colo. 1979).  Although most cases

involving this right arise in the context of a prisoner's right of access to the courts, *see, e.g.,*

*Bounds v. Smith,* 430 U.S. 817 (1977), at least one circuit court has found that non-prisoners may

bring a similar claim, *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427-28

(8th Cir. 1986).

---

[6] *See also* Am. Compl. at 5-6 ("The Town of South Fork Retalited [sic] against a police
officer (Plaintiff) which[] is a 14th Amendment violation for the City receiving a federal civil
law suite [sic]); *id* at 6 ("In addition Plaintiff is a victim of retaliation by the Town of South Fork
for a civil law suit being brought against the Town of South Fork and Plaintiff.").

Even assuming that Plaintiff may assert such a claim, it must fail.  "To establish a claim for unlawful retaliation against a public employee based on that employee's exercise of First Amendment rights" the employee must allege "(i) that he engaged in constitutionally-protected First Amendment activity; (ii) that the defendant took an adverse action against him that would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) that the adverse action was substantially motivated by the employee's protected activity." *Cillo v. City of Greenwood Village,* --- F. Supp. 2d ----, 2012 WL 4478952, at *2 (D. Colo. Sept. 28, 2012) (citing *Shero v. City of Grove,* 510 F.3d 1996, 1203 (10th Cir. 2007)).

Here, Plaintiff's claim fails on the first prong.  Plaintiff does not allege he exercised his constitutionally-protected right of access to the courts.  Rather, it was the *Zelenok* plaintiffs who exercised this right by filing a federal civil rights lawsuit against Plaintiff and the Town of South Fork, based on Plaintiff's conduct during the August 16, 2008 traffic stop.  Other than bringing this matter, Plaintiff has not alleged that he engaged in any constitutionally protected activity. Accordingly, the court finds that Plaintiff's Fourteenth Amendment claim is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim for relief.

**B.      *Title VII and ADEA Claims***

The Town Defendants argue that Plaintiff's Title VII and ADEA claims are (1) procedurally barred for failure to comply with timely filing and administrative exhaustion prerequisites, and (2) are improperly brought against the individual defendants.  (Town Defs. Mot. at 7-12.)

### 1.    *Individual Liability Under Title VII and ADEA*

Individual-capacity suits are an inappropriate way to proceed in Title VII and ADEA actions. *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) ("Under Title VII . . . individual capacity suits are inappropriate.  The relief granted under Title VII is against the employer, not individual employees whose action would constitute a violation of the Act"); *see Birkbeck v. Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994) ("[T]he ADEA limits civil liability to the employer."]); *Smith v. Lomax*, 45 F.3d 402, 403 (11th Cir. 1995) (individual county commissioners could not be considered plaintiff's employer and therefore could not be held liable under the ADEA or Title VII); c*f. Butler v. City of Prairie Village*, 172 F.3d 736, 744 (10th Cir. 1999) (basing holding that the ADA precludes individual suit on reasoning that it defines employers in same terms as the ADEA).  Accordingly, to the extent that Plaintiff's Title VII and ADEA claims are targeted at the individual Town Defendants, the court finds that they are properly dismissed.

### 2.    *Failure to Exhaust Administrative Remedies*

Exhaustion of administrative remedies is a jurisdictional prerequisite to suit under both Title VII and the ADEA. *Jones v. Runyon*, 91 F.3d 1398, 1399 (10th Cir. 1996) (Title VII); *Shikles v. Sprint/United Mgmt. Co.*, 426 F.3d 1304, 1317 (10th Cir. 2005) (ADEA).  As Title VII and the ADEA have virtually identical requirements with respect to filing EEOC charges, their exhaustion requirements are the same. *Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 n.1 (10th Cir. 2004).  A plaintiff, as the party seeking federal jurisdiction, has the burden of showing exhaustion of remedies. *McBride v. CITGO Petroleum Corp.*, 281 F.3d 1099, 1106 (10th Cir.

2002).  Exhaustion of administrative remedies requires that the plaintiff timely present his claims

to the EEOC and receive a right-to-sue letter based on those claims.  *Simms v. Okla. ex rel. Dep't*

*of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999).

Plaintiff maintains that he filed a charge of discrimination with the EEOC on July 18,

2011.  (Am. Compl. at 2.)  The only document attached to his Amended Complaint is an

unsigned Colorado Civil Rights Division ("CCRD") Charge of Discrimination.  (*Id*. at 33.)

However, based on the fact that the Charge states "I want this charge filed with both the Equal

Employment Opportunity Commission and the State or local Agency," the court will presume

that it was indeed filed with the EEOC.  *See Rodriguez v. Wet Ink, LLC,* 603 F.3d 810, 813 (10th

Cir. 2010) (describing collaborative worksharing agreement between the EEOC and the CCRD

whereby each agency has "designate[d] the other as its agent for the purpose of receiving and

drafting [employment discrimination] charges.")

Nevertheless, Plaintiff has not demonstrated that he received a right to sue letter from the

EEOC.  Plaintiff maintains that he received a right-to-sue letter on November 11, 2011, but no

such letter is attached to his Amended Complaint.  (*Id*. at 2, 24.)  The Town Defendants have

submitted with their Motion to Dismiss the November 11, 2011 letter to which Plaintiff

ostensibly refers.[7]  (Town Defs. Mot., Ex. C.)  That document is not a right-to-sue letter from the

EEOC; rather it is a Determination Letter from the CCRD finding no probable cause to support

---

[7] The court may review this document because exhaustion implicates the court's subject-matter jurisdiction.  *Holt*, 46 F.3d 1003.

Plaintiff's claim of retaliation.[8]  (*Id.*)  "Nothing in the worksharing agreement or relevant case law support [the] view that the CCRD can issue right-to-sue notices of behalf of the EEOC." *Rodriguez,* 603 F.3d at 813.  As such, this CCRD determination letter *does not* constitute an EEOC right to sue letter.

Otherwise, there is no evidence in the record to support Plaintiff's position that he received a right-to-sue notice letter from the EEOC.  As such, the court finds that Plaintiff has failed to sustain his burden of demonstrating he has exhausted administrative remedies. Accordingly, Plaintiff's Title VII and ADEA claims as to the remaining Town Defendants are properly dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

**C.     *Failure to Release Records Claim***

The court finds that Plaintiff's claim that some defendants "won't release freedom of information and release of records request" (Am. Compl. at 2) is targeted at both the Town and State Defendants.  As to the State Defendants, this claim appears to concern Defendant Pam Stewart's failure to release records to Plaintiff at the Alamosa, Colorado office.  (Am. Compl. at 28.)  As to the Town Defendants, Plaintiff alleges he placed a "request of release of records and[/]or freedom information act request in writing to South Fork and PD" but that he "never received a legal reason why they did not respond in writing."  (*Id.* at 27.)

To the extent that this claim can be construed to assert violations of the Colorado Open Records Act or Open Meetings Act (*see* State Defs. Mot. at 5-6), these statutes do not provide

---

[8] It appears that Plaintiff erroneously assumes that the Determination Letter constitutes an EEOC right-to-sue letter.

for private rights of action.  *See* Colo. Rev. Stat. § 24-72-206 (Colorado Open Records Act);

Colo. Rev. Stat. § 24-6-402 (Colorado Sunshine Law); *see also Shields v. Shelter*, 682 F. Supp.

1172, 1175 (D. Colo. 1988) ("The exclusive remedy for a violation of the Colorado Open

Records Act is C.R.S. § 24-72-206.  That section does not provide for a private right of action.")

(internal citation omitted).  Additionally, the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*,

is inapplicable here because it applies to federal, rather than state, agencies.  *See Grand Cent.*

*Partnership, Inc. v. Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999) ("it is beyond question that [the

Freedom of Information Act] applies only to federal and not to state agencies"); *Philip Morris*

*Inc. v. Harshbarger*, 122 F.3d 58, 83 (1st Cir. 1997) ("The [Freedom of Information Act],

however, by its own terms, applies only to federal executive branch agencies.").

　　　　Accordingly, this court finds Plaintiff's claim for failure to release records is properly

dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Therefore, the court

finds that Defendants' Motions to Dismiss are properly granted as to this claim.

**D.**　　　**State Law Tort and Breach of Contract Claims**

　　　　Plaintiff also asserts claims for defamation and breach of a contract allegedly made

during the September 22, 2009 meeting.  (Am. Compl. at 6, 29-31.)  However, the court has now

found that all of Plaintiff's federal law claims are properly dismissed.  As such, the court finds it

proper to decline to exercise jurisdiction over Plaintiff's state law claims.  *See Smith v. City of*

*Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the

court may, and usually should, decline to exercise jurisdiction over any remaining state

claims.").

**WHEREFORE**, for the foregoing reasons, the court respectfully

**RECOMMENDS** that Defendants Town of South Fork, Town of South Fork Police Department, James Chavez, Sharon Fairchild, Todd Wright, Larry Heersink, and Grover Hathorn's "Motion to Dismiss Pursuant to F.R.C.P. 12(B)(1) (sic) & (6)" (Doc. No. 16), the "Motion to Dismiss of Defendants Colorado State Patrol and Pam Stewart" (Doc. No. 31), and Defendant Randy Herrera's "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) & (6)" (Doc. No. 72) be **GRANTED**, that all federal law claims against these defendants be dismissed with prejudice, and that the District Court decline to exercise jurisdiction over Plaintiff's state law claims against these defendants. The court further

**RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal. *See Coppedge v. United States*, 369 U.S. 438 (1962). Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00 appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed. R. App. P. 24.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A

general objection that does not put the district court on notice of the basis for the objection will not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review."  *United States v. One Parcel of Real Prop. Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to make timely objections may bar *de novo* review by the district judge of the magistrate judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at 1059-60 (a party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the district court or for appellate review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342,

1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 5th day of February, 2013.

BY THE COURT:

Kathleen M. Tafoya
United States Magistrate Judge