IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 12-cv-00336-CMA-KMT

DENNY BENTON,

 Plaintiff,

v.

TOWN OF SOUTH FORK AND POLICE DEPARTMENT,
FORMER POLICE CHIEF RANDY HERRERA,
CURRENT POLICE CHIEF JAMES CHAVEZ,
AT TIMES ACTING TOWN MANAGER AND CLERK SHARON FAIRCHILD,
FORMER TOWN MANAGER TODD WRIGHT,
FORMER MAYOR LARRY HEERSINK,
TOWN MANAGER BILL MATTHEWS,
TRUSTEE GROVER HAWETHORNE,
COLORADO STATE PATROL DISPATCH ALAMOSA, COLORADO, and
POLICE OFFICER PAM STEWART,

 Defendants.

---

## RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

---

**Magistrate Judge Kathleen M. Tafoya**

 This matter is before the court on Defendants Town of South Fork, Town of South Fork Police Department, James Chavez, Sharon Fairchild, Todd Wright, Larry Heersink, and Grover Hathorn's "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) [sic] & (6)" (Doc. No. 16, filed June 27, 2012 ["Town Defs. Mot."]), the "Motion to Dismiss of Defendants Colorado State Patrol and Pam Stewart" (Doc. No. 31, filed July 20, 2012 ["State Defs. Mot."]), and Defendant Randy Herrera's "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) & (6)" (Doc. No. 72, filed

Oct. 23, 2012 [Herrera Mot. Dismiss.]).[1]  For the following reasons, the court recommends that

the Motions be GRANTED.

## FACTUAL BACKGROUND

The following factual background is derived from Plaintiff's Amended Title VII

Complaint (Doc. No. 9, filed Apr. 27, 2012 ["Am. Compl."]) and the parties' submissions with

respect to this Recommendation.  At the outset, the court notes that Plaintiff's Amended Title

VII Complaint is far from a model of clarity—indeed, it is styled in a narrative fashion that does

not always progress chronologically or logically.  As a consequence, the court refers to other

documents when necessary to provide context.

Plaintiff Denny Benton was a police officer with the Town of South Fork Police

Department until his resignation on September 23, 2009.  (*Id*. at 15.)  On August 16, 2008, a

little more than one year prior to Plaintiff's resignation, Plaintiff initiated a traffic stop of a car

driven by David Zelenok, the Public Works Director for the City of Centennial, Colorado.  (*See*

*Zelenok v. Benton, et al.,* Case No. 09-cv-01918-WDM-KMT, Doc. No. 1.)[2]  Approximately one

---

[1]The court refers hereinafter to Defendants Town of South Fork, Town of South Fork
Police Department, James Chavez, Sharon Fairchild, Todd Wright, Larry Heersink, Grover
Hathorn, <u>and</u> Defendant Herrera, collectively, as the "Town Defendants."  Defendant Matthews
has not been properly served at this juncture.  (*See* Order Granting Motion to Quash, Doc. No.
88.)  Plaintiff has until March 7, 2013 to effect service on Defendant Matthews.  (*See id.* at 6.)

[2] The court takes judicial notice of the pleadings filed in the *Zelenok* case.  *See*
*Continental Coal, Inc. v. Cunningham*, 511 F. Supp. 2d 1065, 1071 (D. Kan. 2007) (court may
take judicial notice of pleadings filed in other cases on Rule 12 motion).

year later, on August 12, 2009, Mr. Zelenok filed a civil rights lawsuit against Plaintiff and the Town of South Fork based on Plaintiff's conduct during that stop.  (*See id.*)

In late August or early September 2009, Defendant Herrera became the new chief of police for the Town of South Fork.  (Am. Compl. at 7.)  According to Plaintiff, "as soon as Chief Herrera arrived it was nothing but threats that he was going to ruin [Plaintiff's] career and [Defendant Herrera] placed [Plaintiff] in a very hostile work environment."  (*Id.*)

First, in early- to mid-September 2009, Defendant Herrera initiated an internal affairs investigation relating to the Zelenok stop—even though, according to Plaintiff, the prior chief of police had already reviewed the stop and "saw nothing wrong with neither [the] stop nor the charges made against Zelenok."  (*Id.* at 8.)  When Plaintiff asked if Mr. Zelenok had filed suit over the stop, Defendant Herrera denied that Plaintiff "was being taken to court."  (*Id.* at 8.)

Second, on September 6, 2009, Plaintiff initiated a traffic stop of a car driven by Mr. Billy Elgin, referred to only in passing in the Amended Complaint as the "Elgin stop." (*Id.* at 21, 28; *see also* Doc. No. 78-2 at 6-8.)  Defendant Herrera disciplined Plaintiff through a formal write-up for his conduct during the Elgin stop after a complaint was lodged with the police department.  (Am. Compl. at 21; *see also* Doc. No. 78-2 at 7-8.)

Third, on September 11 and 13, 2009, Plaintiff did not report on time for his scheduled shifts.  (Am. Compl. at 10.)  Defendant Hererra formally wrote Plaintiff up for these incidents even though, according to Plaintiff, department policy and procedure required an officer to be late three times before being disciplined.  (*Id.* at 10; *see also* Doc. No. 78-2 at 2-5.)

Fourth, Defendant Herrera allegedly told Plaintiff that two town trustees wanted him fired.  (Am. Compl. at 9.)  Plaintiff deduces that Defendant Hathorn must have been one of those trustees because Defendant Hathorn previously threatened the Town of South Fork Police Department and Plaintiff, in particular, with financial reprisal after Plaintiff cited him for having his dogs off-leash.  (*Id*. at 9, 15.)

Finally, Defendant Herrera allegedly told Plaintiff that a man Plaintiff's age "should be looking for another career."  (*Id*. at 9.)  Plaintiff also maintains that he was "treated the exact opposite of the other two Hispanic Officers by Herrera."  (*Id*. at 15.)  Defendant Herrera allegedly gave these two Hispanic Officers extra time to work during a music festival while Plaintiff was ordered not to work at all.  (*Id*. at 16.)  Defendant Herrera also promoted Defendant Chavez to an unspecified position, notwithstanding Plaintiff's seniority.  (*Id*. at 16.)

The disciplinary actions discussed above culminated in a September 22, 2009 meeting between Plaintiff, Defendant Wright, and Defendant Herrera.  (*Id*. at 10-13, 16, 21, 31.)  At that meeting, Defendants Wright and Herrera presented Plaintiff with at least one of the formal write-ups and informed him that they were going to recommend that Plaintiff be fired at the town board meeting the next night.  (*Id*. at 10.)  It appears that Plaintiff may have been offered the option of resigning in lieu of termination—if he did so before the town board meeting—as

4

Plaintiff alludes vaguely to an informal agreement whereby certain write-ups[3] would not go into his personnel file if he resigned.  (*Id*. at 11.)

Plaintiff formally resigned on September 23, 2009.  (*Id*. at 15.)  During his exit interview, he presented a "written complaint/grievance" to Defendant Heersink, the town mayor at the time.  (*Id*. at 15-16.)  Defendant Heersink allegedly told Plaintiff that the grievance would go in his personnel file and Plaintiff would look like a "big whiner."  (*Id*.)

After resigning, Plaintiff searched for police officer positions elsewhere.  However, the Town of Delta, Colorado, Police Department rejected Plaintiff's application after viewing his Town of South Fork Police Department personnel file.  (*Id*. at 14, 18.)

In December 2009, Plaintiff was served with a summons from the Zelenok lawsuit.  (*Id*. at 14; *see also* Return of Summons, Doc. No. 18, Case No. 09-cv-01918-WDM-KMT.)  Plaintiff alleges that prior to his being served, he did not know that he was named as a defendant in that case.  (Am. Compl. at 14.)

Plaintiff obtained a copy of his personnel file in January 2011 from Defendant Fairchild, the Town of South Fork Town Clerk.  (*Id*. at 23.)  Plaintiff alleges that Defendant Fairchild (1) made statements to the effect that Plaintiff should be glad he did not go to prison and that there was always drama going on in the Town; (2) charged Plaintiff $1.00 per page to copy records instead of $0.25; (3) forwarded Plaintiff's personnel file to an attorney without a court order; and

---

[3]Plaintiff appears to assert such an agreement constituted a verbal contract between himself, Defendant Herrera and Defendant Wright that was breached when Plaintiff later discovered those write-ups in his personnel file.  (Am. Compl. at 29.)

(4) did not "follow through" on an unspecified hospital bill regarding stitches Plaintiff received while he was employed.  (*Id*. at 23-25.)

In December 2011, Plaintiff filed a release of records request and a freedom of information act request with the Town of South Fork and the South Fork Police Department for "police policies and procedures[,] for the Zelenok Case file and audio" and for the minutes from the "hostile work meeting."  (*Id*. at 27.)  However, he "never received a legal reason why they did not respond in writing."  (*Id.*)

That same month, December 2011, Plaintiff requested a copy of the case file on the Zelenok traffic stop from Defendant Colorado State Patrol Dispatch in Alamosa, Colorado, which, according to Plaintiff, is a subcontractor of the Town of South Fork.  (*Id*. at 28-29.)  He received a response from Defendant Stewart "saying that they did have it but it was on a computer they did not know how to get it off of."  (*Id.* at 28.)  Defendant Stewart also said "something close . . . to [Plaintiff] should just leave it at that."  (*Id.*)

In January 2012, Plaintiff obtained a copy of the file kept on the Zelenok traffic stop from the Town of South Fork and alleges that the file had been changed since Plaintiff resigned.  (*Id*. at 23-25.)  Plaintiff further alleges that Defendants Chavez and Mathews threatened to arrest him when he tried to view both his personnel file and the Zelenok case file again.  (*Id*.)  Plaintiff also alleges he was refused a copy of the police department procedures and policies.  (*Id*. at 26.)[4]

---

[4] Plaintiff's Amended Complaint also features a lengthy discussion of his interactions with his own counsel on the *Zelenok* case.  (*See generally* Am. Compl.)  However, Plaintiff has not named these individuals as defendants in this case; as such, these allegations are not relevant to this Recommendation.

**PROCEDURAL BACKGROUND**

Plaintiff, proceeding *pro se*, commenced this lawsuit by filing his Title VII Complaint on February 8, 2012.  (Doc. No. 1.)  Plaintiff's Amended Complaint, now the operative pleading, was filed on April 27, 2012.  (Am. Compl.)  Therein, he appears to assert (1) claims under Title VII of the Civil Rights Act of 1964 for race discrimination, retaliation, and hostile work environment (*id*. at 3); (2) claims under the Age Discrimination in Employment Act of 1967 (ADEA) for age discrimination, retaliation, and hostile work environment (*id*.); (3) a claim under 42 U.S.C. § 1983 for violations of his Fourteenth Amendment rights (*id*. at 3-6, 28-29); and (4) state law claims for defamation and breach of contract (*id*. at 6, 29-31).  Plaintiff also asserts an ambiguous claim that some defendants "won't release freedom of information and release of records request."  (*Id*. at 3.)

The Town Defendants, with the exception of Defendant Herrera, filed their Motion to Dismiss on June 27, 2012.  (Town Defs. Mot.)  Defendants Colorado State Patrol and Pam Stewart (collectively, the "State Defendants") filed their Motion to Dismiss on July 20, 2012.  (State Defs. Mot.)  Defendant Herrera filed his Motion to Dismiss on October 23, 2012, which incorporates much of the Town Defendants' Motion to Dismiss by reference.[5]  (Herrera Mot. Dismiss.)

On November 13, 2012, Plaintiff filed his "Motion for Amended Response to Oppose Defendants (sic) Motion to Vacate This Case."  (Doc. No. 78 [Resp.].)  Although not entirely

---

[5] Hereinafter, the court's references to the Town Defendants' Motion to Dismiss are intended to encompass both Doc. Nos. 16 and 72.

7

clear, the court construes this document to be a response to the Motions to Dismiss.  The Town

Defendants filed "Responses" to this document, (Doc. Nos. 82, 83, filed Nov. 27, 2012),

which—because the court has construed Plaintiff's "Motion for Amended Response" as a

response—constitute replies in support of their Motions to Dismiss.  Plaintiff subsequently filed

"Rebuttals" (Doc. Nos. 86, 87, filed Dec. 26, 2012), which effectively constitute improper

surreplies.  *See* D.C.COLO.LCivR 7.1 C.  Nevertheless, although they were filed well after the

applicable deadlines to respond to any of the Motions to Dismiss, the court has reviewed and

considered Plaintiff's Response and Surreplies, and has concluded that they do not alter the

court's recommended disposition of Defendants' Motions to Dismiss.

## LEGAL STANDARDS

### A.    Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*.  The court, therefore, "review[s] his pleadings and other

papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys."

*Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted); *see also*

*Haines v. Kerner*, 404 U.S. 519, 520 (1972) (holding allegations of a *pro se* complaint "to less

stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's

"conclusory allegations without supporting factual averments are insufficient to state a claim

upon which relief can be based."  *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)

(citations omitted).  A court may not assume that a plaintiff can prove facts that have not been

alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged.  *Associated*

*Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526, 103 S.Ct.

897, 74 L.Ed.2d 723 (1983); *see also Whitney v. New Mexico*, 113 F.3d 1170, 1173-74 (10th Cir.

1997) (a court may not "supply additional factual allegations to round out a plaintiff's

complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may

not "construct arguments or theories for the plaintiff in the absence of any discussion of those

issues").

**B.**     ***Lack of Subject Matter Jurisdiction***

Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss a complaint for lack of subject

matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  Dismissal under Rule 12(b)(1) is not a judgment

on the merits of a plaintiff's case.  Rather, it calls for a determination that the court lacks

authority to adjudicate the matter, attacking the existence of jurisdiction rather than the

allegations of the complaint.  *See Castaneda v. INS*, 23 F.3d 1576, 1580 (10th Cir. 1994)

(recognizing federal courts are courts of limited jurisdiction and may only exercise jurisdiction

when specifically authorized to do so).  The burden of establishing subject matter jurisdiction is

on the party asserting jurisdiction.  *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th

Cir. 1974).  A court lacking jurisdiction "must dismiss the cause at any stage of the proceedings

in which it becomes apparent that jurisdiction is lacking."  *See Basso*, 495 F.2d at 909.  The

dismissal is without prejudice.  *Brereton v. Bountiful City Corp.*, 434 F.3d 1213, 1218 (10th Cir.

2006); *see also Frederiksen v. City of Lockport*, 384 F.3d 437, 438 (7th Cir. 2004) (noting that

dismissals for lack of jurisdiction should be without prejudice because a dismissal with prejudice

is a disposition on the merits which a court lacking jurisdiction may not render).

A Rule 12(b)(1) motion to dismiss "must be determined from the allegations of fact in the complaint, without regard to mere conclusory allegations of jurisdiction." *Groundhog v. Keeler*, 442 F.2d 674, 677 (10th Cir. 1971).  When considering a Rule 12(b)(1) motion, however, the Court may consider matters outside the pleadings without transforming the motion into one for summary judgment. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995).  Where a party challenges the facts upon which subject matter jurisdiction depends, a district court may not presume the truthfulness of the complaint's "factual allegations ... [and] has wide discretion to allow affidavits, other documents, and [may even hold] a limited evidentiary hearing to resolve disputed jurisdictional facts under Rule 12(b)(1)." *Id*.

**C.**     ***Failure to State a Claim Upon Which Relief Can Be Granted***

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6) (2007).  "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Bellmon*, 935 F.2d at 1198.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570

(2007)).  Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id*.  The *Iqbal* evaluation requires two prongs of analysis.  First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory.  *Id*. at 678-80.  Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief."  *Id*. at 681.  If the allegations state a plausible claim for relief, such claim survives the motion to dismiss.  *Id*. at 679.

Notwithstanding, the court need not accept conclusory allegations without supporting factual averments.  *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998).  "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678.  Moreover, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'  Nor does the complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'"  *Id*. (citation omitted).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'"  *Id*. (citation omitted).

## D.    *Qualified Immunity*

The doctrine of qualified immunity shields government officials from individual liability for civil damages "insofar as their conduct does not violate clearly established statutory or

11

constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Qualified immunity is "an immunity from suit rather than a mere defense to liability; and like an absolute immunity, it is effectively lost if a case is erroneously permitted to go to trial." *Saucier v. Katz*, 533 U.S. 194, 200-01 (2001).

Although qualified immunity is most often raised at the summary judgment stage, the Tenth Circuit has recognized the propriety of raising a qualified immunity defense in a motion to dismiss. *See Pueblo Neighborhood Health Ctr., Inc. v. Losavio*, 847 F.2d 642, 645-46 (10th Cir. 1988). Once the defense is asserted, the burden shifts to the plaintiff to establish 1) that the defendant's actions violated a federal constitutional or statutory right and 2) that the federal right was clearly established at the time of the challenged conduct. *PJ ex rel. Jensen v. Wagner*, 603 F.3d 1182, 1196 (10th Cir. 2010); *see also Losavio*, 847 F.2d at 646. While the plaintiff bears this burden, at the motion to dismiss stage, well-pleaded factual allegations are taken as true, although the court must consider whether they plausibly give rise to a claim for relief. *Weise v. Casper*, 593 F.3d 1163,1166 (10th Cir. 2010). The plaintiff first must establish that his allegations, taken in the light most favorable to plaintiff, show that the officer's conduct violated a constitutional right. *Saucier*, 533 U.S. at 201. If the plaintiff establishes a violation of a constitutional or statutory right, "the next, sequential step is to ask whether the right was clearly established." *Id*. This determination must be made "in light of the specific context of the case, not as a broad general proposition." *Id*. "[T]he relevant, dispositive inquiry . . . is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he

confronted." *Id*. at 202.  If the plaintiff fails to satisfy either part of this "heavy two-part

burden," the court must grant the defendant qualified immunity and dismiss the deficient claims.

The United States Supreme Court has altered somewhat the analytical process outlined in

*Saucier*, holding that the sequence of the analysis is no longer mandatory.  *Pearson v. Callahan*,

555 U.S. 223 (2009).  The judges of the district courts and the courts of appeals are now

permitted to exercise their sound discretion in deciding which of the two prongs of the qualified

immunity analysis should be addressed first in light of the circumstances in the particular case at

hand.  *Id*. at 236.  The Supreme Court noted, however, that the sequence set forth in *Saucier*

often is the appropriate analytical sequence.  *Id*.

## ANALYSIS

### A.   *Fourteenth Amendment Claim*

In their Motion to Dismiss, the Town Defendants concluded that Plaintiff's Fourteenth

Amendment claim asserts a violation of his due process rights and relates solely to conduct that

occurred prior to Plaintiff's resignation.  As such, the Town Defendants argue that Plaintiff's

Fourteenth Amendment claim is barred by the applicable statute of limitations and, alternatively,

fails to state a substantive or procedural due process violation.  (Town Defs. Mot. at 10-11.)  The

State Defendants, on the other hand, conclude that Plaintiff's Fourteenth Amendment claim

concerns Defendant Stewart's failure to send Plaintiff the information he requested from the

Alamosa, Colorado office.  (State Defs. Mot. at 4-6.)

Defendants' confusion is understandable; Plaintiff's Complaint is unnecessarily verbose

and often unintelligible.  However, the court disagrees with both sets of Defendants as to the

13

subject matter of Plaintiff's Fourteenth Amendment claim.  Instead, liberally construing Plaintiff's Amended Complaint, as it must, the court finds that Plaintiff's Fourteenth Amendment claim asserts that the Town Defendants retaliated against him based on the *Zelenok* lawsuit.  In support of this construction, the court points to Plaintiff's statement that "the Town of South Fork retaliated against the Plaintiff for a Federal Civil Law Suit being filed by an influential citizen (wrongful influence)[] [w]ithout informing Officer Benton of the Lawsuit [] was brought against him as well.  This is a 14th amendment violation."  (Am. Compl. at 3-4) (emphasis added.)[6]

The only claim remotely analogous to Plaintiff's allegations is a § 1983 claim for impermissible retaliation based on a plaintiff's exercise of his First Amendment right of access to the courts.  The First Amendment applies to state actors by way of incorporation into the due process clause of the Fourteenth Amendment.  *Citizens Concerned for Separation of Church and State v. City and Cnty. of Denver,* 481 F. Supp. 522 (D. Colo. 1979).  Although most cases involving this right arise in the context of a prisoner's right of access to the courts, *see, e.g., Bounds v. Smith,* 430 U.S. 817 (1977), at least one circuit court has found that non-prisoners may bring a similar claim, *Harrison v. Springdale Water & Sewer Comm'n,* 780 F.2d 1422, 1427-28 (8th Cir. 1986).

---

[6] *See also* Am. Compl. at 5-6 ("The Town of South Fork Retalited [sic] against a police officer (Plaintiff) which[] is a 14th Amendment violation for the City receiving a federal civil law suite [sic]); *id* at 6 ("In addition Plaintiff is a victim of retaliation by the Town of South Fork for a civil law suit being brought against the Town of South Fork and Plaintiff.").

14

Even assuming that Plaintiff may assert such a claim, it must fail.  "To establish a claim for unlawful retaliation against a public employee based on that employee's exercise of First Amendment rights" the employee must allege "(i) that he engaged in constitutionally-protected First Amendment activity; (ii) that the defendant took an adverse action against him that would chill a person of ordinary firmness from continuing to engage in that activity; and (iii) that the adverse action was substantially motivated by the employee's protected activity."  *Cillo v. City of Greenwood Village,* --- F. Supp. 2d ----, 2012 WL 4478952, at *2 (D. Colo. Sept. 28, 2012) (citing *Shero v. City of Grove,* 510 F.3d 1996, 1203 (10th Cir. 2007)).

Here, Plaintiff's claim fails on the first prong.  Plaintiff does not allege he exercised his constitutionally-protected right of access to the courts.  Rather, it was the *Zelenok* plaintiffs who exercised this right by filing a federal civil rights lawsuit against Plaintiff and the Town of South Fork, based on Plaintiff's conduct during the August 16, 2008 traffic stop.  Other than bringing this matter, Plaintiff has not alleged that he engaged in any constitutionally protected activity.  Accordingly, the court finds that Plaintiff's Fourteenth Amendment claim fails to state a claim for relief.  Further, because Plaintiff has failed to establish a violation of his constitutional rights, the court finds that the individual Town Defendants are entitled to qualified immunity from this § 1983 claim.  *Saucier*, 533 U.S. at 201.

**B.**     ***Title VII and ADEA Claims***

The Town Defendants argue that Plaintiff's Title VII and ADEA claims are (1) procedurally barred for failure to comply with timely filing and administrative exhaustion

prerequisites, and (2) are improperly brought against the individual defendants.  (Town Defs.

Mot. at 7-12.)

### 1.      *Individual Liability Under Title VII and ADEA*

Individual-capacity suits are an inappropriate way to proceed in Title VII and ADEA

actions.  *Haynes v. Williams*, 88 F.3d 898, 899 (10th Cir. 1996) ("Under Title VII . . . individual

capacity suits are inappropriate.  The relief granted under Title VII is against the employer, not

individual employees whose action would constitute a violation of the Act"); *see Birkbeck v.*

*Marvel Lighting Corp.*, 30 F.3d 507, 511 (4th Cir. 1994) ("[T]he ADEA limits civil liability to

the employer."]); *Smith v. Lomax*, 45 F.3d 402, 403 (11th Cir. 1995) (individual county

commissioners could not be considered plaintiff's employer and therefore could not be held

liable under the ADEA or Title VII); c*f. Butler v. City of Prairie Village*, 172 F.3d 736, 744

(10th Cir. 1999) (basing holding that the ADA precludes individual suit on reasoning that it

defines employers in same terms as the ADEA).  Accordingly, to the extent that Plaintiff's Title

VII and ADEA claims are targeted at the individual Town Defendants, the court finds that they

are properly dismissed.

### 2.      *Failure to Exhaust Administrative Remedies*

The Town Defendants argue that Plaintiff has failed to exhaust administrative remedies because

Plaintiff has not attached a valid right-to-sue letter from the EEOC.  (Town Defs. Mot. at 7.)  For

the following reasons, this argument fails.

In order to pursue Title VII and ADEA claims, a plaintiff must first file a charge with the

EEOC.  *Annett v. Univ. of Ks.,* 371 F.3d 1233, 1238 (10th Cir. 2004) (Title VII); *Dodson v. Bd.*

*of Cnty. Comm'rs,* 878 F. Supp.2d 1227, 1240 (D. Colo. 2012) (ADEA); S*ee also Foster v. Ruhrpumpen, Inc.*, 365 F.3d 1191, 1194 n.1 (10th Cir. 2004) (citing *Terry v. Ashcroft,* 336 F.3d 128, 151 (2d Cir. 2003)) ("The ADEA and Title VII have virtually identical requirements with respect to the filing of EEOC charges . . . .")  Filing a charge with the EEOC is a jurisdictional prerequisite to suit under Title VII and the ADEA.  *Annett,* 371 F.3d at 1238; *Shikles v. Sprint/United Mgmt. Co.,* 426 F.3d 1304, 1317 - 18 (10th Cir. 2005) ("Unlike many other circuits, we have held that a plaintiff's exhaustion of his or her administrative remedies is a jurisdictional prerequisite to suit under Title VII-not merely a condition precedent to suit.").[7]

The court finds that Plaintiff filed a charge with EEOC.[8]  On July 18, 2011, Plaintiff filed Charge of Discrimination with the Colorado Civil Rights Division ("CCRD").  (Compl. at 33; *see also id.* at 2.)  The charge states, "I want this charge filed with both the Equal Employment Opportunity Commission and the State or local Agency."  (*Id.* at 33.)  The CCRD and the EEOC have entered a worksharing agreement whereby "each agency 'designate[s] the other as its agent for the purpose of receiving and drafting [employment discrimination] charges' . . . ."  *Rodriguez v. Wet Ink, LLC,* 603 F.3d 810, 813 (10th Cir. 2010).  This means that "after each agency receives a discrimination charge, it is filed automatically with the other agency."  *Id.*  Therefore,

---

[7] The Supreme Court in *Zipes v. Trans World Airlines, Inc*., 455 U.S. 385, 393 (1982) held that a *timely* filing before the EEOC was not jurisdictionally required to maintain suit in the district court.  The Tenth Circuit is alone in holding that the *filing* of a charge with the EEOC is still a jurisdictional requirement, rather than a condition precedent to filing a federal action.  *See Jones v. Runyon,* 91 F.3d 1398, 1400 (10th Cir. 1996)(collecting cases).

[8] However, for reasons discussed *infra*, this charge was not *timely* filed.

17

the court finds that Plaintiff has demonstrated that he filed a charge with the EEOC by way of the charge filed with the CCRD.  This fact *alone* provides the court with subject matter jurisdiction over Plaintiff's ADEA claims.   "[A] right to sue letter is not a prerequisite to sue under the ADEA."  *Shikles,* 426 F.3d at 1304 (citing 29 U.S.C. § 636).  Therefore, Plaintiff's failure to attach a right-to-sue letter to his Complaint, by itself, does not bar his claims under the ADEA.[9]

With respect to Plaintiff's Title VII claim, however, in addition to filing a charge with the EEOC, Plaintiff must also receive a right-to-sue letter.  *Simms v. Okla. ex rel. Dept. of Mental Health and Substance Abuse Servs.,* 165 F.3d 1321, 1326 (10th Cir. 1999).  *See, e.g. Bertsch v. Overstock.com,* 684 F.3d 1023, 1030 (10th Cir. 2012).  More specifically, § 2000e-5(f)(1) provides, in pertinent part:

> . . .  If a charge filed with the Commission pursuant to subsection (b) of this section is dismissed by the Commission, or *if within one hundred and eighty days from the filing of such charge* or the expiration of any period of reference under subsection (c) or (d) of this section, whichever is later, the Commission has not filed a civil action under this section or the Attorney General has not filed a civil action in a case involving a government, governmental agency, or political subdivision, or the Commission has not entered into a conciliation agreement to which the person aggrieved is a party, the Commission, or the Attorney General in a case involving a government, governmental agency, or political subdivision, *shall so notify the person aggrieved and within ninety days after the giving of such notice a civil action may be brought against the respondent named in the charge* (A) by the person claiming to be aggrieved . . . .

---

[9] The Town Defendants have not otherwise argued that Plaintiff's ADEA claims—or Title VII claims, for that matter—are outside the scope of the charge filed with the EEOC. Plaintiff's charge vaguely states that his discrimination claim is based on "retaliation" without referring to either Title VII or the ADEA.  (Compl. at 33.)  Because the court ultimately finds that this charge was not *timely* filed, the court does not resolve this issue.

42 U.S.C. § 2000e-5(f)(1)(emphasis added).

When considering a motion pursuant to Rule 12(b)(1) to determine the court's subject matter jurisdiction, the court is allowed to consider extrinsic evidence. *Holt v. United States*, 46 F.3d 1000, 1003 (10th Cir. 1995). The Town Defendants have submitted with their Motion to Dismiss a determination letter from the CCRD that was mailed to Plaintiff on November 10, 2011. (Town Defs. Mot., Ex. C.) That determination letter concludes that there is "No Probable Cause" with respect to Plaintiff's claim of retaliation and grants Plaintiff a right to sue within ninety days of the mailing of the letter, or within ninety days of the mailing of a final notice dismissing Plaintiff's appeal, if any. (*Id.* at 4.)

To the extent that Plaintiff believes this determination letter constitutes a right-to-sue letter from the "Equal Employment Opportunity Commission or other appropriate administrative agency," (Am. Compl. at 2), he is incorrect. Although, as discussed above, the CCRD and the EEOC have each "designat[ed] the other as its agent for the purpose of *receiving* and drafting [employment discrimination] charges' . . . [,] nothing in the worksharing agreement or relevant case law supports [the] view that the CCRD can issue right-to-sue notices on behalf of the EEOC." *Rodriguez,* 603 F.3d at 813, 815. Therefore, it appears that while Plaintiff did receive a right-to-sue letter from the state CCRD, he did *not* receive a right-to-sue letter from the EEOC allowing him to file federal claims.

Nevertheless, whether the court has subject-matter jurisdiction is not resolved merely by that fact alone. From the time of filing his charges with the CCRD (and consequently with the

EEOC), more than 180 days elapsed before Plaintiff filed his this action.  Pursuant to § 2000e-5(f)(1), at the conclusion of 180 days, Plaintiff became entitled to receive his Notice and permission to sue.  The Tenth Circuit has adopted the reasoning of the Fourth Circuit that "where an aggrieved employee files suit after the expiration of the 180 days [], jurisdiction over his or her claim exists, even if a right-to-sue letter was not actually received."  *E.E.O.C. v. W.H. Braum, Inc.*, 347 F.3d 1192, 1200 (10th Cir. 2003)(citing *Perdue v. Roy Stone Transfer Corp.*, 690 F.2d 1091, 1093 (4th Cir.1982).  Thus, in *W.H. Braum,* the court concluded that because the claimant had filed her federal law suit "more than 180 days after she filed her charge with the EEOC, the district court properly had jurisdiction over her claim." *Id.*

Plaintiff filed his CCRD complaint on July 18, 2011.  (Compl. at 33.)  The 180-day period expired on January 14, 2012.  He filed this federal lawsuit on February 8, 2012.  (*See id.*)  Therefore, the court has subject-matter jurisdiction over the Title VII claims.

In this case, however, because Plaintiff's Title VII claims are directed at a public employer—i.e. the Town of South Fork—42 U.S.C. § 2000e-5(f)(1) requires, in addition to any other requirements of the statute, that Plaintiff receive a right-to-sue letter from the Attorney General.

> In the case of a respondent which is a government, governmental agency, or political subdivision, if the Commission has been unable to secure from the respondent a conciliation agreement acceptable to the Commission, *the Commission shall take no further action and shall refer the case to the Attorney General who may bring a civil action against such respondent in the appropriate United States district court* .

42 U.S.C. § 2000e-5(f)(1) (emphasis added).

In *Hiller v. Oklahoma ex rel Used Motor Vehicle & Parts Comm'n,* 327 F.3d 1247, 1250 (10th Cir. 2003), the court considered the regulatory scheme which has evolved from this special treatment of Title VII suits against governmental entities, especially with respect to 29 C.F.R. § 1601.28(d).  That regulation provides

> In all cases where the respondent is a government, governmental agency, or a political subdivision, *the Commission* will issue the notice of right to sue when there has been a dismissal of a charge. . . . In all other cases where the respondent is a government, governmental agency, or political subdivision, the Attorney General will issue the notice of right to sue, . . . .

29 C.F.R. § 1601.28(d) (emphasis added).  In *Hiller*, the Tenth Circuit acknowledged two possible interpretations of § 2000e-5(f)(1).  On the one hand, courts have held that "'the statutory language and structure contemplate that the Commission will issue right to sue notices in cases involving a governmental unit when it does not find probable cause.'"  *Id.* (quoting *Dougherty v. Barry,* 869 F.2d 605, 611 (D.C. Cir. 1989)); *see also Flint v. California*, 594 F. Supp. 443, 445 (E.D. Cal. 1984).  Other courts, however, "have determined the statute is unambiguous in cases involving a government entity, expressly requiring that the Attorney General, not the EEOC, to issue the notice in all cases involving a government respondent."  *Id.* (citing *Hendrix v. Mem. Hosp.,* 776 F.2d 1255, 1256-57 (5th Cir. 1985); *Fouche v. Jekyll Island State Park Auth.,* 713 F.2d 1518, 1524 (11th Cir. 1983)).

The *Hiller* court also acknowledged that the Tenth Circuit's own cases were in conflict on this issue.  *Stewart v. Oklahoma,* 292 F.3d 1257, 1259-60 (10th Cir. 2002), followed the

21

former approach, whereas *Thames v. Okla Hist. Soc.,* 809 F.2d 699, 700 (10th Cir. 1987) *aff'g,*

*per curiam,* 646 F. Supp. 13, 16 (W.D. Okla. 1985)), was in accord with the latter.  *Id.* at 1250-

51.  Nevertheless, the court held that, "to the extent that *Thames* and *Stewart* are in conflict, []

we are obligated to follow the earlier panel decision [*Thames*] over the later one."  *Id.* at 1251.

Accordingly, in the Tenth Circuit, in Title VII cases where a government entity is a respondent,

the right-to-sue letter must be issued by the Attorney General.  *Id.*

Notably, unlike receipt of a right-to-sue letter from the EEOC, which is a jurisdictional

prerequisite to suit under Title VII, *see, e.g. Bertsch v. Overstock.com,* 684 F.3d 1023, 1030

(10th Cir. 2012), the *Hiller* court unambiguously held that receipt of a right-to-sue letter from the

Attorney General is *not* jurisdictional, 327 F.3d at 1251-52.[10]  Instead, the Tenth Circuit treats

the Attorney General's right-to-sue letter as a nonjurisdictional condition precedent to suit under

Title VII and thus equitable considerations can excuse a plaintiff's failure to obtain a right-to-sue

letter from the Attorney General.  *Hiller,* 327 F.3d at 1251-52 (quoting *Townsend v. State of*

*Okla. ex rel. Okla. Military Dep't,* 760 F. Supp. 884 (W.D. Okla. 1991)) (noting that a plaintiff

"should not be penalized merely because the attorney general routinely refuses to issue right-to-

sue letters").

---

[10] This distinction is curious.  In this court's view, nothing in § 2000e-5(f)(1) supports
this jurisdictional distinction between a right-to-sue letter from the EEOC and a right-to-sue
letter from the Attorney General.  They appear simply to be parallel administrative remedies for
private and public employers, respectively.  Nevertheless, this court is bound to apply the statute
as interpreted by the Tenth Circuit.

Unlike a jurisdictional issue, which is evaluated under Rule 12(b)(1) and allows the court to consider evidence outside the complaint, *Holt*, 46 F.3d at 1003, a "condition precedent to suit [] functions like a statute of limitations." *Barrett v. Rumsfeld,* 158 F. App'x 89, 91 (10th Cir. 2005). Therefore, the court must decide whether Plaintiff has satisfied the condition precedent under Rule 12(b)(6). *Id.* The court's consideration under Rule 12(b)(6) is limited to the four corners of the complaint and any attached exhibits. *Oxendine v. Kaplan,* 241 F.3d 1272 (10th Cir. 2001).

The court is unable to determine from the Amended Complaint and exhibits attached whether Plaintiff received a right-to-sue letter from the Attorney General. The Complaint states that "Plaintiff received from the Equal Employment Opportunity Commission or other appropriate administrative agency a Notice of Right to Sue the Defendant(s) on November 10, 2011." (Am. Compl. at 2.) However, although the Amended Complaint includes a specific direction to "attach to the complaint a copy of the Notice of Right to Sue" (*id.*), no such notice is attached.[11] As such, the court cannot resolve, based on solely on review of the Amended Complaint,[12] whether Plaintiff received a right-to-sue letter from the Attorney General.

---

[11] The court acknowledges that, in all likelihood that the November 10, 2011 to which Plaintiff refers is the determination letter received from the CCRD. However, it is procedurally improper for the court to consider the determination letter, which is attached to the Town Defendants' Motion, in resolving this issue under Rule 12(b)(6).

[12] The court could perhaps convert the Town Defendants' Motion into a motion for summary judgment to resolve this question. *See* Fed. R. Civ. P. 12(d). Because the court finds *supra* that Plaintiff's Title VII and ADEA claims are clearly barred because Plaintiff's discrimination charge was not *timely* filed, the court declines to convert Defendants' Motion to Dismiss into a Motion for Summary Judgment in order to address this issue.

23

Accordingly, at this procedural juncture, the court cannot conclude that Plaintiff has failed to satisfy this condition precedent to suit.

### 3.    *Untimeliness*

Defendants also argue that Plaintiff's Title VII and ADEA claims are untimely because Plaintiff failed to file his charge with the CCRD within 300 days after his resignation.  (Town Defs. Mot. at 7-8.)  Although the court has jurisdiction over Plaintiff's Title VII and ADEA claims because he *filed* a charge of discrimination with the EEOC, the court agrees that Plaintiff's claims are nevertheless barred because he did not *timely* file that charge.  *See Carson v. Cudd Pressure Control, Inc.,* 299 F. App'x 845, 847 n.4 (10th Cir. 2008) (citing *Beaird v. Seagate Tech., Inc.,* 145 F.3d 1159, 1174-75 (10th Cir. 1998)) ("[T]he *filing* of a charge is jurisdictional, but the *timeliness* of that charge is not.").

"In Colorado, ADEA and Title VII complainants must file a charge of discrimination within 300 days after the alleged unlawful discriminatory practice occurred."[13]  *Bullington v. United Airlines,* 186 F.3d 1301, 1310 (10th Cir. 1999) *overruled on other grounds by Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101 (2002).  Filing within these deadlines is mandatory. *Morgan,* 536 U.S. at 109.  The requirement that a plaintiff timely file a charge of discrimination with the EEOC "is best likened to a statute of limitations and is therefore subject to waiver, estoppel, and equitable tolling." *Beaird*, 145 F.3d at 1175 (10th Cir. 1998).

---

[13] The 300-day filing period applies to "deferral states," such as Colorado, in which the EEOC defers to the enforcement efforts of a state agency empowered to undertake employment discrimination investigations. *Bullington,* 186 F.3d at 1310 n.2 (citing 42 U.S.C. § 2000e-5). Otherwise, the filing period is 180 days.  *Id.*

Here, Plaintiff resigned on September 23, 2009.  (Compl. at 15.)  Any claim for discrimination under Title VII and the ADEA accrued on or before that day because, thereafter, the Town of South Fork was no longer Plaintiff's employer.  *See* 42 U.SC. § 2000e-2 (prohibiting unlawful practices of an "employer"); 29 U.S.C. § 623(a) (same).  Therefore, Plaintiff was required to file his charge of discrimination on or before July 20, 2010.  Plaintiff admits, however, that he did not file his charge of discrimination with the EEOC, by way of the CCRD, until July 18, 2011—nearly two years after his resignation and almost a year later than required.  (*Id.* at 2.)

Therefore, Plaintiff's Title VII and ADEA claims are time-barred, in the absence of grounds supporting equitable tolling or estoppel.  Plaintiff has not presented any reason, let alone a cogent one, as to why he waited over 650 days from the date of his resignation before filing his charge with the EEOC.  (*See* Resp.)  *See also Dumas v. Proctor & Gamble Mfg. Co.,* 453 F. App'x 819, 821 (10th Cir. 2011) (plaintiff bears the burden of establishing sufficient grounds for equitable tolling).  Accordingly, the court finds that Plaintiff's Title VII and ADEA claims are properly dismissed as time-barred.

## C.      *Failure to Release Records Claim*

The court finds that Plaintiff's claim that some defendants "won't release freedom of information and release of records request" (Am. Compl. at 2) is targeted at both the Town and State Defendants.  As to the State Defendants, this claim appears to concern Defendant Pam Stewart's failure to release records to Plaintiff at the Alamosa, Colorado office.  (Am. Compl. at 28.)  As to the Town Defendants, Plaintiff alleges he placed a "request of release of records

25

and[/]or freedom information act request in writing to South Fork and PD" but that he "never received a legal reason why they did not respond in writing."  (*Id.* at 27.)

To the extent that this claim can be construed to assert violations of the Colorado Open Records Act or Open Meetings Act (*see* State Defs. Mot. at 5-6), these statutes do not provide for private rights of action.  *See* Colo. Rev. Stat. § 24-72-206 (Colorado Open Records Act); Colo. Rev. Stat. § 24-6-402 (Colorado Sunshine Law); *see also Shields v. Shelter*, 682 F. Supp. 1172, 1175 (D. Colo. 1988) ("The exclusive remedy for a violation of the Colorado Open Records Act is C.R.S. § 24-72-206.  That section does not provide for a private right of action.") (internal citation omitted).  Additionally, the Freedom of Information Act, 5 U.S.C. § 552 *et seq.*, is inapplicable here because it applies to federal, rather than state, agencies.  *See Grand Cent. Partnership, Inc. v. Cuomo*, 166 F.3d 473, 484 (2d Cir. 1999) ("it is beyond question that [the Freedom of Information Act] applies only to federal and not to state agencies"); *Philip Morris Inc. v. Harshbarger*, 122 F.3d 58, 83 (1st Cir. 1997) ("The [Freedom of Information Act], however, by its own terms, applies only to federal executive branch agencies.").

Accordingly, this court finds Plaintiff's claim for failure to release records is properly dismissed pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.  Therefore, the court finds that Defendants' Motions to Dismiss are properly granted as to this claim.

**D.      *State Law Tort and Breach of Contract Claims***

Plaintiff also asserts claims for defamation and breach of a contract allegedly made during the September 22, 2009 meeting.  (Am. Compl. at 6, 29-31.)  However, the court has now found that all of Plaintiff's federal law claims are properly dismissed.  As such, the court finds it

proper to decline to exercise jurisdiction over Plaintiff's state law claims.  *See Smith v. City of Enid*, 149 F.3d 1151, 1156 (10th Cir. 1998) ("When all federal claims have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").

 **WHEREFORE**, for the foregoing reasons, the court respectfully

 **RECOMMENDS** that Defendants Town of South Fork, Town of South Fork Police Department, James Chavez, Sharon Fairchild, Todd Wright, Larry Heersink, and Grover Hathorn's "Motion to Dismiss Pursuant to F.R.C.P. 12(B)(1) (sic) & (6)" (Doc. No. 16), the "Motion to Dismiss of Defendants Colorado State Patrol and Pam Stewart" (Doc. No. 31), and Defendant Randy Herrera's "Motion to Dismiss Pursuant to F.R.C.P. 12(b)(1) & (6)" (Doc. No. 72) be **GRANTED**, that all federal law claims against these defendants be dismissed, and that the District Court decline to exercise jurisdiction over Plaintiff's state law claims against these defendants.  The court further

 **RECOMMENDS** that the District Court certify, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this recommendation would not be taken in good faith and therefore *in forma pauperis* status will be denied for the purpose of appeal.  *See Coppedge v. United States*, 369 U.S. 438 (1962).  Thereafter, if Plaintiff files a notice of appeal he also must pay the full $455.00

appellate filing fee or file a motion to proceed *in forma pauperis* in the United States Court of

Appeals for the Tenth Circuit within thirty days of the court's final order in accordance with Fed.

R. App. P. 24.

### ADVISEMENT TO THE PARTIES

Within fourteen days after service of a copy of the Recommendation, any party may

serve and file written objections to the Magistrate Judge's proposed findings and

recommendations with the Clerk of the United States District Court for the District of Colorado.

28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995).  A

general objection that does not put the district court on notice of the basis for the objection will

not preserve the objection for *de novo* review.  "[A] party's objections to the magistrate judge's

report and recommendation must be both timely and specific to preserve an issue for de novo

review by the district court or for appellate review."  *United States v. One Parcel of Real Prop.*

*Known As 2121 East 30th Street, Tulsa, Okla.*, 73 F.3d 1057, 1060 (10th Cir. 1996).  Failure to

make timely objections may bar *de novo* review by the district judge of the magistrate judge's

proposed findings and recommendations and will result in a waiver of the right to appeal from a

judgment of the district court based on the proposed findings and recommendations of the

magistrate judge.  *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (a district court's

decision to review a magistrate judge's recommendation *de novo* despite the lack of an objection

does not preclude application of the "firm waiver rule");  *One Parcel of Real Prop.*, 73 F.3d at

1059-60 (a party's objections to the magistrate judge's report and recommendation must be both

timely and specific to preserve an issue for *de novo* review by the district court or for appellate

review);  *Int'l Surplus Lines Ins. Co. v. Wyo. Coal Ref. Sys., Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the magistrate judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the magistrate judge's ruling); *but see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 12th day of February, 2013.

BY THE COURT:

Kathleen M Tafoya
United States Magistrate Judge